UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ELIZABETH NOFFSINGER-HARRISON, individually and on behalf of all persons similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LP SPRING CITY, LLC, LP SPRING CITY, LLC, doing business as SPRING CITY CARE AND REHABILITATION CENTER, and SIGNATURE HEALTHCARE, LLC,<br><br>　　　　Defendants. | Case No. 1:12-CV-161<br><br>Judge Curtis L. Collier |

## MEMORANDUM

Before the Court is a motion to compel arbitration and stay the proceedings filed by Defendants LP Spring City, LLC; LP Spring City, LLC, doing business as Spring City Care and Rehabilitation Center; and Signature Healthcare, LLC (collectively, "Defendants") (Court File No. 9). Shortly thereafter, Plaintiff Elizabeth Noffsinger-Harrison ("Plaintiff") filed an amended complaint (Court File No. 12). Plaintiff also filed a response in opposition to Defendants' motion (Court File No. 13). After considering the parties' arguments and the relevant case law, the Court will **GRANT IN PART** Defendants' motion to compel arbitration and will **STAY** the action pending arbitration (Court File No. 9). Specifically, the Court deems the arbitration agreement enforceable with the exception of the cost-splitting provisions incorporated into the arbitration agreement in accordance with the American Health Lawyers Association's ("AHLA") Rules of Procedure for Arbitration. The Court concludes the cost-splitting provisions would deter Plaintiff from vindicating her statutory rights and are therefore unenforceable. The cost-splitting provisions

will be severed from the rest of the agreement. The Court will order Defendants to pay the entire administrative fee as well as the other arbitration-related expenses that were originally to be split by the parties under the AHLA's rules. In the event Plaintiff prevails, however, she will be required to reimburse Defendants for those costs and expenses.

I. **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The facts relevant to this motion are not in dispute and come primarily from Plaintiff's first amended complaint unless otherwise indicated (Court File No. 12 ("Am. Compl.")). Plaintiff was hired at Defendants' Spring City, Tennessee facility as the Director of Nursing around December 15, 2008 (Am. Compl. ¶ 5).[1] Plaintiff's workload increased during the spring and summer of 2011 when several employees quit their jobs (*id.* ¶ 6). In June 2011, Plaintiff received a satisfactory job evaluation as well as a salary increase (*id.* ¶ 8). On July 28, 2011, Plaintiff became ill at work and was subsequently admitted to the hospital in critical condition (*id.* ¶ 9). She was discharged on August 8, 2011, and told not to return to work for approximately four to six weeks (*id.* ¶ 10). During this time period, Plaintiff informed Defendants of her medical condition and requested FMLA leave (*id.* ¶ 11). On August 11, 2011, Plaintiff was informed by phone that her position had been terminated (*id.* ¶ 12).

Defendants maintain an employee handbook that is referred to as the "Stakeholder Handbook" (Am. Compl. ¶ 13). Section 2.6 of the Stakeholder Handbook discusses arbitration. The section reads as follows:

---

[1] Defendants contend Plaintiff's actual employer was Signature Payroll Services, LLC, though Defendants are affiliates of Signature Payroll Services, LLC (Court File No. 10 at 2 n.2; Court File No. 11 ("McCoy Decl."), ¶ 3).

> All disputes between Stakeholders and the company or its management, which are not resolved through the Conflict Resolution procedure, must be submitted to binding arbitration. As a condition of employment, applicants and stakeholders shall sign an Arbitration Agreement.
>
> Signed acknowledgment of receipt of the Stakeholder Handbook shall serve as acceptance and understanding of this condition of employment, thereby binding Stakeholders to the Arbitration Agreement.

(Court File No. 11-3 at 2). Defendants have also offered a copy of the "Stakeholder Handbook Acknowledgment" signed by Plaintiff (Court File No. 11-2). Both parties have provided a copy of the "Arbitration Agreement" signed and dated by Plaintiff on December 15, 2008 (Court File Nos. 11-1 at 1; 12-2 at 2). The form reads in pertinent part:

> In consideration of the company employing you and the mutual promises set forth herein, you and the company and your and its representatives, successors, and assigns agree to the following:
>
> (1) All claims relating to your recruitment, employment with, or termination of employment from the Company shall be deemed waived unless submitted to final and binding arbitration in accordance with the Federal Arbitration Act ("FAA") or, if a court determines the FAA does not apply, by any applicable state arbitration act, in accordance with the rules of the American Health Lawyers Association ("AHLA"). . . .
>
> (2) In the event that either the employee or the company seeks relief in a court of competent jurisdiction for a dispute covered by this Agreement, the other party may, at any time within sixty (60) days of the service of the complaint, require the dispute to be arbitrated, and that the decision and award of the arbitrator shall be final, binding, and enforceable in the courts.
>
> (3) This dispute resolution agreement covers all matters directly or indirectly related to your recruitment, employment, or termination of employment by the Company, including, but not limited to, alleged violations of [list of various federal statutes] . . . and any and all claims under federal, state, and local laws and common law but excluding Worker's Compensation Claims and unemployment benefits.
>
> (4) In the event any portion of this Agreement shall be determined by a court to be invalid, the remainder of this Agreement shall remain in full force and effect, and this provision shall survive such determination.

> (5) The arbitrator shall have the authority to award the full range of remedies that could be awarded by a court setting in the applicable jurisdiction and applying relevant law including, without limitation and if applicable, an award of attorney's fees and costs.
>
> (6) This agreement shall be binding upon your heirs, successors, and assigns.
>
> YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. IF SO, TAKE A COPY OF THIS FORM WITH YOU. HOWEVER, YOU WILL NOT BE OFFERED EMPLOYMENT UNTIL THIS FORM IS SIGNED AND RETURNED BY YOU.
>
> PLEASE READ THESE PROVISIONS CAREFULLY. BY SIGNING BELOW, YOU ARE ATTESTING THAT YOU HAVE READ AND UNDERSTOOD THIS DOCUMENT AND ARE KNOWINGLY AND VOLUNTARILY AGREEING TO ITS TERMS.
>
> BOTH PARTIES WAIVE TRIAL BY JURY.

(*id.*). Finally, Defendants offer a copy of a second arbitration agreement signed and dated by Plaintiff on February 17, 2010 (Court File No. 11-1 at 2).

Plaintiff filed suit against Defendants alleging violations of the Family Medical and Leave Act ("FMLA") and its regulations, pursuant to 29 U.S.C. §§ 2601 *et seq.* (Am. Compl. ¶¶ 3, 28-39). Plaintiff seeks back pay, reinstatement (or in the alternative, front pay and benefits), liquidated damages, and attorney's fees and costs (*id.* at 8). Plaintiff also requests that the Court order Defendants to "(1) cease requiring its employs to sign agreements calling for arbitration of employment law claims, (2) amend its employee handbook to conform with the applicable regulations concerning notice of rights under the FMLA, and (3) notify its employees of these actions" (*id.* at 8-9). Finally, if the Court concludes Defendants can require its employees to sign the arbitration agreement at issue, Plaintiff requests that the Court order Defendants "to cease purporting to require its employees to pay an excessive administrative fee or to split the cost of all arbitration expenses" (*id.* at 9).

## II. DISCUSSION

A motion to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.* Under the FAA, arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). Moreover, the provisions of the FAA are mandatory. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (emphasis in original) (citing 9 U.S.C. §§ 3-4).

If a party challenges the validity or enforceability of an arbitration agreement under § 2 of the FAA, the court must consider those issues before ordering compliance with the agreement. *See Rent-A-Center, West, Inc.*, 130 S.Ct. at 2778. A party may avoid arbitration if it can show the agreement itself is invalid or unenforceable. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The party "resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moreover, to show the validity of the agreement is in question, the party opposing arbitration must show a genuine issue of material fact exists on this issue. *Id.*

Here, neither party disputes Plaintiff consented to arbitration. Plaintiff was given a copy of the Stakeholder Handbook, which describes Defendants' arbitration policy, and she signed the Stakeholder Handbook Acknowledgment (Court File No. 11-2). Plaintiff also signed and dated two arbitration agreements, one dated December 15, 2008 (Court File Nos. 11-1 at 1; 12-2 at 2), and the

other dated February 17, 2010 (Court File No. 11-1 at 2). Although some of these documents were produced by Defendants, Plaintiff does not dispute their authenticity. Therefore, the Court will assume, for purposes of this motion, that the forms are authentic memorializations of the parties' agreement to arbitrate. *See Pennington v. Frisch's Rests., Inc.*, 147 F. App'x 463, 467 (6th Cir. 2005).

Plaintiff does, however, challenge the enforceability of the arbitration agreement. Plaintiff takes a novel approach--that is, by arguing the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.*, prohibits the enforcement of the arbitration agreement in this case and, in the event the Norris-LaGuardia Act is in conflict with the FAA, the Norris-LaGuardia Act must prevail. Plaintiff also contends the arbitration agreement cannot be enforced because it is part of a larger scheme to interfere with employees' rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1). In the alternative, Plaintiff challenges the provision that provides arbitration shall be conducted in accordance with the rules of the American Health Lawyers Association ("AHLA") on two grounds. Plaintiff contends the AHLA's cost-splitting provisions are unenforceable and questions the neutrality of the AHLA and its rules. The Court will address each issue in turn.

### A. Norris-LaGuardia Act

As a preliminary matter, Plaintiff argues the Court should not enforce Defendants' arbitration agreement because the Norris-LaGuardia Act prohibits its enforcement. Plaintiff concedes the United States Supreme Court, the Court of Appeals for the Sixth Circuit, and this Court have all consistently enforced arbitration agreements under the FAA. Nonetheless, Plaintiff via counsel argues she "is not aware of either the Supreme Court or the Sixth Circuit ordering enforcement of an employer-imposed arbitration 'agreement' in the face of a challenge based upon the Norris-

LaGuardia Act, which declared employer-imposed contracts contrary to the public policy of the United States and unenforceable in its courts" (Court File No. 13 at 7). Certainly, however, this is due in part to the fact that such a challenge has never been raised in those courts. Plaintiff also argues the mandates of the FAA must yield to the Norris-LaGuardia Act if there is a conflict between the two statutes. In making these arguments, Plaintiff relies primarily upon a recent decision of the National Labor Relations Board ("NLRB"), *D.R. Horton, Inc.*, 357 N.L.R.B. No. 184, 2012 WL 36274 (Jan. 3, 2012).

Notwithstanding the lack of case law on the interrelationship between the FAA and the Norris-LaGuardia Act, Defendants argue it is well-established that arbitration agreements are to be liberally enforced under the FAA. Defendants also claim Plaintiff's primary source of support, *D.R. Horton, Inc.*, is not binding on this Court, has not been followed by other courts, and is not relevant to the facts of this case. For the reasons explained below, the Court agrees with Defendants that the Norris-LaGuardia Act does not prevent the Court from enforcing the arbitration agreement in this case.

The Norris-LaGuardia Act was enacted in 1932. The statute prohibits courts from ordering injunctive relief under circumstances such as those "growing out of a labor dispute" or "contrary to the public policy" declared in the Act. 29 U.S.C. § 101. The Norris-LaGuardia Act is most recognized for prohibiting the enforcement of "yellow dog" contracts--that is, employment agreements or contracts where a party agrees "not to join, become, or remain a member of any labor organization or of any employer organization" or a party agrees to "withdraw from an employment relation in the event that he joins, becomes, or remains a member of any labor organization or of any employer organization." 29 U.S.C. § 103.

Plaintiff highlights the fact that the statute forbids the enforcement of any such agreement that would be contrary to public policy. *See* 29 U.S.C. § 103 ("Any undertaking or promise, such as is described in this section, or any other undertaking or promise in conflict with the public policy declared in section 102 of this title, is declared to be contrary to the public policy of the United States, shall not be enforceable in any court of the United States . . . ."). Among other things, the public policy rationale behind the Act, as explained in section 102, reads in part:

> Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, *the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment*, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, *and that he shall be free from the interference, restraint, or coercion of employers of labor*, or their agents, in the designation of such representatives or in self-organization *or in other concerted activities for* the purpose of collective bargaining or *other mutual aid or protection* . . .

29 U.S.C. § 102 (emphasis added). Plaintiff contends Defendants' arbitration agreement is contrary to public policy in light of section 102. In Plaintiff's own words, "[t]he public policy referred to was the recognition that contracts entered into between employers and individual employees are not contracts freely entered into and will not be enforced against employees in courts of the United States" (Court File No. 13 at 9).

In making her arguments, Plaintiff primarily relies upon *D.R. Horton, Inc.*, a decision issued by the NLRB. In *D.R. Horton, Inc.*, the NLRB determined that an employer violated section 8(a)(1) of the National Labor Relations Act when it required its employees to sign an arbitration agreement containing a class and collective action waiver. Among other grounds offered in support of its decision, the NLRB discussed the applicability of the Norris-LaGuardia Act, explaining that

8

under the Norris-LaGuardia Act, a private agreement that seeks to prohibit a "lawful means [of] aiding any person participating or interested in" a lawsuit arising out of a labor dispute (as broadly defined) is unenforceable, as contrary to the public policy protecting employees' "concerted activities for . . . mutual aid or protection." To the extent that the FAA requires giving effect to such an agreement, it would conflict with the Norris-LaGuardia Act.

*D.R. Horton, Inc.*, 2012 WL 36274 at \*16. In the event of a conflict between the Norris-LaGuardia Act and the FAA, the Board explained the Norris-LaGuardia Act would prevail because it was enacted seven years after the FAA and section 15 of the Norris-LaGuardia Act expressly repeals all conflicting acts.[2] *Id.*

While the Court has given careful thought to Plaintiff's arguments, Plaintiff's stance cannot be adopted by this Court for several reasons. First and foremost, Plaintiff attempts to topple decades of case law supporting the enforceability of arbitration agreements yet offers no binding case law in support of her position. The NLRB's decision, particularly its view on the relationship between the FAA and the Norris-LaGuardia Act, is not binding on this Court. *See Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 843 (N.D. Cal. 2012) (noting "[w]hile the NLRB's interpretation of the [National Labor Relations Act] should be given some deference, its interpretation of other federal statutes is not," in explaining why the *D.R. Horton, Inc.* decision would not alter its conclusion that the Norris-LaGuardia Act does not prohibit the enforcement of the arbitration agreement). Moreover, even if *D.R. Horton, Inc.* had some precedential value, the case is largely distinguishable on its facts given that the parties in the instant case have not raised any concerns about class action waivers in arbitration agreements, which was the underlying issue in *D.R. Horton, Inc.*

---

[2] This section of the Norris-LaGuardia Act reads in entirety: "All acts and parts of acts in conflict with the provisions of this chapter are repealed." 29 U.S.C. § 115.

Plaintiff's argument that the Norris-LaGuardia Act repeals the FAA if the statutes are in conflict also lacks merit. As the Court of Appeals for the Eighth Circuit noted in a recent decision, the FAA was reenacted in 1947, fifteen years after the passage of the Norris-LaGuardia Act. *Owen v. Bristol Care, Inc.*, 12-1719, 2013 WL 57874, at *3 (8th Cir. Jan. 7, 2013). The Eighth Circuit opined, "[t]he decision to reenact the FAA suggests that Congress intended its arbitration protections to remain intact even in light of the earlier passage of three major labor relations statutes [such as the Norris-LaGuardia Act]." *Id.* If the Court was to follow Plaintiff's interpretation of the law, it would have the effect of making most, if not all, arbitration agreements unenforceable, which is clearly contrary to the clear mandates of the FAA.

Accordingly, Plaintiff's arguments, while novel, fail to sway this Court to adopt an interpretation of the law that flies in the face of decades of law supporting the liberal enforcement of arbitration agreements under the FAA.

### B. FMLA Violation

Plaintiff also argues the Court should decline to enforce the arbitration agreement because the agreement itself is part of "an elaborate and misleading scheme to deter the exercise of employee rights under the FMLA" (Court File No. 13 at 15). In support of this argument, Plaintiff notes the economic barriers that exist before an employee can exercise the right to arbitrate her claims. Plaintiff also highlights her concerns regarding the neutrality of the AHLA and its arbitration rules. She contends these matters as well as other conduct on the part of Defendants interferes with employees' rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1). While Plaintiff seeks relief by requesting that the Court not enforce the arbitration agreement, Plaintiff is also, in essence, asking the Court to rule on the merits of this particular FMLA claim alleged in the amended

complaint.

At this stage, it is important that the Court distinguish between matters pertaining solely to arbitrability and matters pertaining to the merits of Plaintiff's case. In the remaining sections of this memorandum, the Court will address Plaintiff's specific concerns about the enforceability of the arbitration agreement. The Court will not, however, make any broader determinations on the merits of Plaintiff's FMLA claims. Those matters should be decided by the arbitrator.

### C. Unenforceable Provisions

The arbitration agreement provides that arbitration shall be conducted in accordance with the rules of the AHLA. Plaintiff has expressed concerns, however, about (1) the enforceability of the cost-splitting provisions incorporated into the arbitration agreement in accordance with the AHLA's rules and (2) the neutrality of the AHLA and its rules.

#### 1. Cost-Splitting Provisions

Plaintiff argues the Court should not enforce the AHLA's cost-splitting provisions that are incorporated into the arbitration agreement. Plaintiff claims she cannot afford to pay the costs associated with arbitration. She contends she would have to pay one-half of the arbitration administrative fee at the outset, which is approximately $1,375, as well as one-half of the arbitrator's projected costs. Plaintiff contends she, as well as other similarly situated employees, would be deterred from arbitrating their cases by these very terms. One solution Plaintiff proposes is to have Defendants pay all the costs of arbitration. Defendants argue, on the other hand, that the terms of the arbitration agreement are not prohibitively expensive and, in the event Plaintiff prevails on the merits, she will be entitled to full recovery of costs, fees, and expenses.

The arbitration agreement expressly states it must be enforced in accordance with the rules

11

of the AHLA. The AHLA's "Rules of Procedure for Arbitration" discuss expenses and cost in sections 7.01 through 7.03. *See* American Health Lawyers Association, *Rules of Procedure for Arbitration*, www.healthlawyers.org/adr. In particular, section 7.01 states "[a]ll expenses of the arbitration, including required travel and other expenses of the arbitrator, and any witness or other proof produced at the written request of the arbitrator, shall be borne equally by the parties, unless the arbitrator in the award assesses such expenses or any part thereof against a specified party or parties." *Id.* According to Appendix I, the total arbitration administration fee alone would be $2,750.00. *Id.* Meanwhile, section 7.03 provides that the parties may be required to deposit "such sums of money as the arbitrator deems reasonable and necessary to defray the expense of the arbitration, including the arbitrator's fee." *Id.*

The Supreme Court has explained that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). If "the splitting or sharing of the costs of the arbitral forum under a particular arbitration agreement effectively prevents the vindication of a plaintiff's statutory rights, those rights cannot be subject to mandatory arbitration under that agreement." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 658 (6th Cir. 2003). In *Morrison*, the Sixth Circuit devised a test that could be applied on a case-by-case basis to determine whether a cost-splitting measure in an arbitration agreement should be enforced. The court held "potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Id.* at 663. As part of this analysis, courts should

"define the class of such similarly situated potential litigants by job description and socioeconomic background." *Id.* It should also consider the average cost of arbitration and, in contrast, the cost to litigate in a judicial forum. *Id.* at 664. Finally, courts should "discount the possibilities that the plaintiff will not be required to pay costs or arbitral fees because of ultimate success on the merits, either because of cost-shifting provisions in the arbitration agreement or because the arbitrator decides that such costs or fees are contrary to federal law." *Id.* at 664. The party challenging the cost-splitting provision bears the burden of demonstrating that the provision would deter employees from vindicating their statutory rights. *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 481 (6th Cir. 2005) (citing *Morrison*, 317 F.3d at 659-60).

Here, Plaintiff has raised a valid issue for the Court's consideration--that is, whether the cost-splitting provisions would deter her and other similarly situated employees from vindicating their statutory rights. While Plaintiff bears the burden on this matter and has not fully addressed all of the *Morrison* factors in her brief, the Court nonetheless concludes the cost-splitting provisions in this case are unenforceable. With respect to defining the class, Plaintiff has stated in her affidavit that, while employed for Defendants, she worked as the Director of Nursing and made approximately $75,000 annually (Court File No. 13-1 ("Noffsinger-Harrison Aff."), ¶ 2). After being terminated from this position, she was unemployed for approximately four months (*id.* ¶ 3). She worked at her next job until May 2012, and since then, has only worked sporadically (*id.*). For example, in June and July 2012, Plaintiff contends she only earned $700.00 (*id.*). Plaintiff offers as her comparators the hourly employees who worked at Defendants' nursing home. She contends the "vast majority of employees" at Defendants' nursing home were hourly employees and earned approximately $8.00 to $9.00 an hour (*id.* ¶ 4).

13

Given that Plaintiff was a salaried employee who worked as a director making $75,000, the Court is hesitant to define Plaintiff's class to include the typical hourly employee. Those individuals probably did not have the same job responsibilities as Plaintiff nor would they likely be in the same socioeconomic group. At the same time, even assuming Plaintiff's class was comprised of individuals who had a similar income and job position, the arbitration fees and costs would still be prohibitive to many such individuals and would discourage many of them from utilizing arbitration to resolve their claims. The employee would be responsible for paying an administrative fee of $1,375 at the outset. Moreover, she would also be responsible for paying one-half of all other arbitration-related costs, some of which the employee may have to deposit upfront. While the $1,375 administrative fee may not be totally cost-prohibitive for someone in Plaintiff's salary range, it is still a significant sum of money, nevermind the other arbitration costs the employee would be responsible for paying at some point during the arbitration process. These considerations are magnified after taking into account the fact that Plaintiff has experienced periods of unemployment since being terminated by Defendants and, at the time this motion was filed, she was performing limited contract work. *See Morrison*, 317 F.3d at 669 ("In the abstract, this sum may not appear prohibitive, but it must be considered from the vantage point of the potential litigant in a case such as this. Recently terminated, the potential litigant must continue to pay for housing, utilities, transportation, food, and the other necessities of life in contemporary society despite losing her primary, and most likely only, source of income.").

Moreover, with respect to the cost of arbitration in contrast to litigation, arbitration can cost thousands or even tens of thousands of dollars, which is often greater than what that same plaintiff

would have had to pay had the case been tried in court.[3] *See id.* In her brief, Plaintiff references an employment discrimination case previously before this Court where the parties participated in arbitration; according to Plaintiff, the arbitration costs totaled $43,730.00. While this is certainly not the norm, the Court is concerned about the deterrent effect high arbitration costs would have on employees.

Finally, with respect to mitigating factors, Defendants note Plaintiff is entitled to relief under the statute if she prevails. Such relief would include costs, fees, and expenses. However, the Sixth Circuit has generally frowned upon provisions that promise later relief due to the chilling effect it may have on employees' decisions to arbitrate at the outset. "In many cases, if not most, employees considering the consequences of bringing their claims in the arbitral forum will be inclined to err on the side of caution, especially when the worst-case scenario would mean not only losing on their substantive claims but also the imposition of the costs of the arbitration." *Morrison*, 317 F.3d at 665. Although this certainly might affect higher-income individuals differently than lower- or middle-income individuals, the Court must still take this into account. Here, Plaintiff avers in her affidavit that the fees and costs would be too high for her to pay (*id.* ¶ 5).

After considering the *Morrison* factors and the available facts in this case, the Court concludes the provisions of the arbitration agreement are cost-prohibitive to Plaintiff and similarly situated employees and are, therefore, unenforceable. The arbitration agreement contains a severability clause (Court File Nos. 11-1 at 1; 12-2 at 2). Accordingly, the cost-splitting provisions as provided in the AHLA's rules will be severed from the rest of the arbitration agreement. *See*

---

[3] Though of course, there are certainly other factors that may influence how much the employee would actually pay upfront taking into account varying fee arrangements that might be offered by counsel.

*Morrison*, 317 F.3d at 677-78 (holding that, under both Tennessee contract law and federal precedent, a cost-splitting provision can be severed from an arbitration agreement where "that provision was not interwoven with the rest of the agreement and may be deleted without affecting the rest of the agreement's provisions regarding arbitration"). The Court will, however, order Defendants to pay the entire administrative fee as well as all the arbitration expenses that the AHLA's rules stated should be split by the parties. In the event Plaintiff prevails, she will be required to reimburse Defendants for those costs and expenses.

### 2. The AHLA

Finally, Plaintiff challenges the neutrality of the AHLA, the organization that created the rules that govern the arbitration agreement in this case. Plaintiff contends the AHLA is likely biased because its panel is selected from a private bar association consisting of lawyers who represent management. Plaintiff also notes one of Defendants' attorneys is an officer of the AHLA. Finally, Plaintiff argues the AHLA's procedures for selecting, utilizing, and terminating arbitrators during the arbitration process lack transparency. Defendants, in contrast, claim Plaintiff's arguments lack any substantive basis and that the AHLA as well as its rules are fair and neutral.

Most of the issues raised in Plaintiff's brief are speculative at best. Unlike in many of the cases where courts have concluded the arbitral forum was not neutral, the AHLA is a non-profit entity and Plaintiff has not shown there is a financial relationship between Defendants and the AHLA or that Defendants exercise any power over the AHLA. *See Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 386 (6th Cir. 2005); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 493 (6th Cir. 2004). Plaintiff is correct that one of Defendants' attorneys, Mark Peters, is a vice-chair of the AHLA's labor and employment committee. However, as explained by Defendants, Peters is vice-

chair of publications and his role is to assist in publishing articles and providing other updates to members. Defendants contend he has no role in selecting arbitrators, creating arbitration rules, or training arbitrators, nor does he have any relationship with the administrator of the AHLA's arbitration program. Plaintiff also points out that most members of the AHLA's board work for private firms. While true, at least one board member is a law professor and another, according to the website, is deputy general counsel for the Department of Health and Human Services. These facts alone, as alleged by the parties, are insufficient to convince the Court that the AHLA could not provide fair and neutral rules and procedures for arbitration.

Plaintiff also questions the lack of transparency in the AHLA's arbitration policies and procedures. However, the same rules Plaintiff cited to illustrate the AHLA's cost-splitting requirements also set forth procedures pertaining to the arbitrator selection process, particularly sections 2.01 through 2.05. While the arbitrators' names are not available in advance, that information can be requested once the arbitration process is initiated. Moreover, the rules provide a mechanism in which the parties receive a list of ten proposed mediators, can strike the name of one mediator, and can rank the remaining arbitrators by preference. Finally, the Court has not found, nor has Plaintiff offered, any cases in which another court has determined that the AHLA is an unfair or non-neutral forum. Accordingly, the Court dismisses Plaintiff's arguments challenging the neutrality of the AHLA and its rules.

### D. Stay Versus Dismissal

In the event the Court concludes the case should be submitted to arbitration, Defendants request that the case be dismissed or, in the alternative, stayed. Under the FAA, if a court determines a cause of action is covered by an arbitration agreement, it must stay the proceedings until the

arbitration is completed. 9 U.S.C. § 3.[4] In keeping with the requirements of the FAA, the Court will stay the proceedings pending arbitration.

**III.  CONCLUSION**

For the foregoing reasons, the Court will **GRANT IN PART** Defendants' motion to compel arbitration and **STAY** the proceedings (Court File No. 9). The Court will enforce the arbitration agreement with the exception of the cost-splitting provisions, which will be severed from the rest of the agreement. The Court will order Defendants to pay the entire administrative fee as well as the arbitration expenses that the AHLA's rules stated should be split by the parties. In the event Plaintiff prevails, however, she will be required to reimburse Defendants for those costs and expenses.

An Order shall enter.

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**

---

[4] Under some circumstances, this circuit has provided that courts can dismiss an action where all of the claims are arbitrable. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).